


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HIGH POINT DESIGN, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Defendant. | 14-Civil Action No. 7878<br><br>COMPLAINT AND JURY DEMAND<br><br>ECF CASE |



Plaintiff High Point Design LLC (hereinafter "High Point"), by its attorneys, as and for its Complaint against Defendant Liberty Mutual Insurance Company (hereinafter "Defendant" or "Liberty"), alleges as follows:

### NATURE OF ACTION

1.  This is an action for breach of insurance contracts. By this action, High Point seeks damages and compensation for the defense costs it has incurred and is continuing to incur in connection with claims asserted against it by a third party corporation named Buyers Direct, Inc. in an action entitled *High Point Design LLC v. Buyers Direct, Inc.*, 11-CV-4530 ("the BDI Action"), that was previously pending in this district and is now on appeal in the Federal Circuit Court of Appeals.

### JURISDICTION AND VENUE

2.  High Point is a limited liability company organized and existing under the laws of the State of New York with an office and place of business located at 1411 Broadway, New York, New York 10018.

3. Upon information and belief, Liberty is an insurance company licensed to do business in the State of New York with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

4. Liberty does business in the State of New York.

5. Liberty transacts business in the State of New York.

6. Since Liberty does business in the State of New York and the insurance contracts at issue were entered into in New York, this Court has personal jurisdiction over Liberty.

7. This Court has subject matter jurisdiction in this action through diversity of the parties, 28 U.S.C. 1332. The sum in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b) because both High Point and Liberty reside in this judicial district and because the transactions and acts that gave rise to this action took place in this district.

## PARTIES

9. High Point is an additional named insured on various Commercial General Liability insurance policies issued by Liberty to High Point's affiliated company Jacques Moret, Inc. ("Moret"). Said policies are effective November 2008 through November 2012.

10. High Point is also an additional named insured on various Umbrella Excess insurance policies issued by Liberty to Moret. Said policies are effective November 2008 through November 2012.

11. High Point conducts its business in the apparel industry by selling, marketing, advertising, promoting and/or distributing clothing and footwear on a wholesale basis.

12. Upon information and belief, Liberty is a company principally engaged in providing all types of insurance to consumers and businesses. Liberty sells its products and services in this judicial district and throughout the United States.

## THE CGL INSURANCE POLICIES

13. High Point and Moret obtained various policies of commercial general liability insurance (hereinafter "the CGL Policies") from Liberty. These policies include

Policy No. YY5-121-093433-028, effective 11/6/08 to 11/6/09;

Policy No. YY5-Z21-093433-029, effective 11/6/09 to 11/6/10;

Policy No. YY5-Z21-093433-020, effective 11/6/10 to 11/6/11; and

Policy No. YY5-Z21-093433-021, effective 11/6/11 to 11/6/12.

A copy of the CGL Policy at issue herein and relevant endorsements are attached hereto as **Exhibit A**.

14. All policy premiums on the CGL Polices issued by Liberty were paid by or on behalf of High Point and/or Moret.

15. High Point and Moret have met every condition required by the CGL Policies for them to be in effect. As a result, said CGL Policies have been and remain in full force and effect.

## "ADVERTISING INJURY" UNDER THE CGL POLICIES

16. The CGL Policies all include coverage for "Personal and Advertising Injury."

17. Pursuant to the terms of the CGL policies, (a) Liberty is obliged to pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which the insurance applies; and (b) Liberty has the right and duty to defend the insured against any suit seeking those damages.

18. Liberty's 'duty to defend' is broader than its 'duty to indemnify' High Point. For example, under controlling law, so long as the claims may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that the insurer is obligated to defend the insured.

19. Under controlling law, Liberty is also required to defend its insured until it is determined "with certainty" that there is no basis for coverage.

20. The definition of "Personal and Advertising Injury" is provided in Coverage B of the CGL policy and its endorsements, and includes, in relevant part, injury arising out of:

"f. The use of another's advertising idea in your advertisement; or

g. Infringing upon another's copyright, trade dress or slogan in your advertisement."

21. Under the same heading, the term "advertisement" is defined broadly as any "paid announcement that is broadcast or published in print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or suppliers." The CGL Policies further provide that for purposes of this definition of advertising, "Announcements that are published include material placed on the Internet or on similar electronic means of communication."

22. The CGL policies also contain two (2) exclusions which have been cited by Liberty in connection with this matter.

23. The first exclusion cited by Liberty relates to a "Knowing Violation" of the rights of another. In this regard, the CGL Policies provide that coverage is excluded for claims in which the personal or advertising injury was "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

24. The second exclusion cited by Liberty relates to "Infringement of Copyright, Patent, Trademark or Trade Secret and Securities Fraud" ("IP Exclusion")  Here, the CGL Policies state that coverage is excluded for personal and advertising injury claims arising out of the infringement of copyright, patent, trademark, trade secret of other intellectual property rights or out of securities fraud.

25. However, the second exclusion provides for an exception whereby the exclusion does not apply to infringement, in your advertisement, of "copyright, trade dress or slogan."

26. Accordingly, coverage is provided to High Point under the CGL Policies for claims relating to (a) "use of another's advertising idea in your advertisement," and (b) infringement in its advertisement of "copyright, trade dress and slogan."

## THE UMBRELLA EXCESS INSURANCE POLICIES

27. High Point and Moret also obtained various Umbrella Excess insurance policies (hereinafter "the Umbrella Policies") from Liberty.

28. All policy premiums on all the Umbrella Polices were paid by or on behalf of High Point and/or Moret.

29. High Point and Moret have met every condition required by all of the Umbrella Policies for them to be in effect. As a result, said Umbrella Policies have been and remain in full force and effect.

30. In addition, all of the Umbrella Policies establish an obligation on Liberty to defend potentially covered claims if no other insurer defends. Specifically, the Umbrella Policies state in relevant part that Liberty "will have the right and duty to defend any suit seeking damages covered by the policy even if the allegations of the suit are groundless, false or fraudulent."

31.     The Umbrella Policies also provide coverage for "Personal and Advertising Injury."

### THE 2008-2011 UMBRELLA POLICIES

32.     In 2008 through 2011, the Umbrella Policies include

Policy No. TH2-621 093433-038, effective 11/6/08 to 11/6/09;

Policy No. TH2-Z21-093433-039, effective 11/6/09 to 11/6/10; and

Policy No. TH2-Z21-093433-030; effective 11/6/10 to 11/6/11.

(collectively "the 2008-2011 Umbrella Policies"). A copy of the 2008 to 2011 Umbrella Policy and relevant endorsements thereto are attached hereto as **Exhibit B**.

33.     The 2008 to 2011 Umbrella Policies provide coverage for "Advertising Injury," which is defined in relevant part as injury arising out of "paid announcements in print or broadcast media resulting in one or more of the following offenses: (c) [C]opying a person's or organization's advertising idea or advertising style … (d) [I]nfringement of copyright, title or slogan."

34.     Unlike the CGL Policies, the 2008-2011 Umbrella Policies do not have an IP Exclusion.

35.     In particular, the 2008-2011 Umbrella Policies do not have an exclusion for infringement of copyright, patent, trademark or trade secret.

### THE 2012 UMBRELLA POLICY

33.     In 2012, Umbrella Policy No. TH2-Z21-093433-031, was effective from 11/6/11 to 11/6/12 (hereinafter "the 2012 Umbrella Policy"). A copy of the 2012 Umbrella Policy is attached hereto as **Exhibit C**.

6

34. The 2012 Umbrella Policy provide coverage for "Personal and Advertising Injury" which is defined in relevant part as "use of another's copyright, trade dress or slogan in your advertisement."

35. The 2012 Umbrella Policy include an exclusion for personal and advertising injury claims arising out of the "infringement of, or any other violation of relating to copyright, patent, trademark, trade name, trade dress or other intellectual property rights." However, the 2012 Umbrella Policy further states that this exclusion does not apply to infringement of copyright, trade dress or slogan committed in your advertisement.

### THE CLAIMS AND LITIGATION THAT GIVE RISE TO LIBERTY'S DUTY TO DEFEND HIGH POINT

36. The underlying dispute that is the subject of this insurance claim began on or about June 22, 2011 when counsel for a company named Buyer's Direct, Inc. ("BDI") and its owner Marshall Bank wrote High Point complaining of a slipper design that BDI alleged infringed its United States design patent. A copy of this letter is attached hereto as **Exhibit D.**

37. High Point thereafter investigated the matter and determined that it did not infringe said design patent. However, when BDI would not drop its claims, High Point commenced an action against BDI seeking declaratory relief of non-infringement of the design patent asserted by BDI. The BDI Action was commenced on July 1, 2011 in this judicial district. A copy of the Complaint for Declaratory Judgment filed by High Point against BDI in the BDI Action is attached hereto as **Exhibit E.**

38. After High Point filed its claim for declaratory relief, the parties had various discussions to try reach a resolution. However, these conversations broke down when BDI contacted High Point's customer, Sears. The email sent by BDI to Sears complained of the same slippers which were the subject of the pending dispute between High Point and BDI. In the

email, BDI specifically referenced a Thanksgiving Day **advertisement** that was then running. A copy of this email and its attachments are included hereto as **Exhibit F**.

39. Thereafter, on December 29, 2011, BDI filed its Answer and Counterclaim. In its Counterclaim, in addition to its claim for infringement of its U.S. design patent, BDI asserted an additional claim for **"trade dress"** relating to the design of slippers being sold by High Point. A copy of BDI's Answer and Counterclaim is attached hereto as **Exhibit G**.

40. The allegedly infringing slipper design was advertised by High Point.

41. In fact, High Point advertised its allegedly infringing slippers through its retailers and directly through various electronic and other means.

42. High Point paid for the allegedly infringing advertisements that contained its slippers.

43. Examples of such advertisements were supplied to Liberty.

### LIBERTY'S IMPROPER DENIAL OF COVERAGE AND DEFENSE

44. After being served with BDI's Counterclaim which alleged, in part, trade dress infringement relating to BDI's purportedly protectable slipper design, High Point provided Liberty with timely notice of BDI's claims and tendered the claim to Liberty for coverage and defense.

45. On March 23, 2012, Liberty, through its counsel, responded to the claim. A copy of this letter is attached hereto as **Exhibit H**.

46. In its responsive letter, Liberty acknowledged and admitted that trade dress is an enumerated 'personal and advertising injury' offense under the CGL Policies and the 2012 Umbrellas Policy. Yet, Liberty still denied coverage and refused to provide a defense to High

Point under the CGL Policies on the grounds that "the alleged trade dress infringement was not caused by an offense committed by High Point in the course of its 'advertisement.'"

47. With respect to the 2008 to 2011 Umbrella Policies, Liberty stated in its responsive letter that "there is a potential that BDI could be claiming that High Point infringed BDI's title," but again denied defense under the Umbrella Policies, stating that "the alleged advertising injury did not result from paid announcements in print or broadcast media."

48. On April 5, 2012, counsel for High Point responded to Liberty's denial letter. A copy of this letter is attached hereto as **Exhibit I.**

49. In this letter, among other things, High Point referred Liberty to various examples of paid advertising which depict the slippers that were alleged to infringe BDI's trade dress. Copies of these advertisements were attached to the letter. On that basis and based on other arguments and information provided in the letter, High Point requested that BDI reconsider its denial.

50. On May 7, 2012, counsel for High Point sent Liberty a follow-up letter. A copy of this letter is attached hereto as **Exhibit J.**

51. In this letter, High Point's counsel provided yet more samples of paid advertising materials that High Point distributed to its customers.

52. Liberty failed to respond to High Point counsel's April 5, 2012 letter until several months later.

53. In a subsequent letter sent by High Point's counsel, High Point also provided Liberty with copies and references to discovery requests from BDI in the BDI Action seeking discovery on High Point's advertising activities. For example:

9

Interrogatory No. 5, requesting the identity of the person "at High Point most knowledgeable about and/or most responsible for...(b) the advertising, marketing and/or promotion of High Point's Accused Products...."

Document Request No. 22, requesting documents constituting all "advertising, marketing, promotional and/or descriptive documents... referring or relating to High Point's Accused Products".

Notice of Deposition of High Point, seeking testimony from persons with knowledge regarding "[a]ll advertisements, marketing statements, sales or marketing presentations, and correspondence with customers or potential customers of High Point relating to High Point's sale or attempted sale of the Accused Products."

54. In response to the foregoing, as well as other letters and materials provided to Liberty, Liberty maintained its denial of defense without any rational explanation therefor.

55. Liberty has continued to refuse to pay for High Point's defense costs which have been incurred to date and which continue to rise.

## COUNT I
## (BREACH OF CONTRACT – CGL POLICIES AND 2012 UMBRELLA POLICY)

56. High Point repeats and realleges all of the preceding paragraphs as if fully set forth herein.

57. This is a cause of action for breach of contract under New York law.

58. Pursuant to the terms of the CGL Policies at issue herein, Liberty was obligated to defend High Point from the claims of that constitute "Advertising Injury" as that term is defined in those policies.

59. One or more of the claims asserted prior to and in the BDI Action constitute "Advertising Injury" under the definition of "Advertising Injury" contained in the CGL Policies and 2012 Umbrella Policy at issue

60. None of the exclusions in the CGL Policies or the 2012 Umbrella Policy is applicable.

61. In particular, trade dress is an enumerated personal and advertising injury offense under the CGL Policy.

62. A trade dress claim was asserted by BDI against High Point.

63. High Point made proper demand for defense in connection with the BDI Action involving High Point and BDI.

64. Liberty was advised of the status of the dispute involving High Point and the status of the litigation throughout the case, and was also provided with additional evidence and discovery that the subject trade dress claim arose out of High Point's advertisements.

65. In particular, copies of High Point's purportedly offending advertising materials were provided to Liberty on more than one occasion showing slippers sold by High Point.

66. Furthermore, discovery requested by BDI of High Point in the BDI Action further demonstrates that the asserted trade dress claim arose out of High Point's advertisements.

67. These discovery requests, refer to High Point's advertisements, advertising, marketing and promotional activities and statements made with regard thereto.

68. Copies of the discovery requests made by BDI which relate to High Point's advertisements were provided to Liberty.

69. Nevertheless, when Liberty finally responded, it improperly refused to defend High Point in the underlying BDI Action.

70. As a result, Liberty has breached the terms of the CGL Policies and the 2012 Umbrella Policy at issue herein.

71. As a result of Liberty's breach, High Point has suffered actual and consequential damages in an amount in excess of $75,000.

## COUNT II
### (BREACH OF CONTRACT – THE 2008-2011 UMBRELLA POLICIES)

72. High Point repeats and realleges all of the preceding paragraphs as if fully set forth herein.

73. This is a cause of action for breach of contract under New York law.

74. Pursuant to the terms of the 2008-2011 Umbrella Policies at issue herein, Liberty was obligated to defend High Point from the claims of that constitute "Advertising Injury" as that term is defined in those policies.

75. One or more of the claims asserted prior to and in the Action constitute "Advertising Injury" under the definition of "Advertising Injury" contained in the 2008-2011 Umbrella Policies at issue, and no exclusion is applicable.

76. In particular, BDI's trade dress claim is an enumerated advertising injury offense falling under the definition of "infringement of title" as that term was construed at the time of BDI's claim.

77. Furthermore, BDI's trade dress claim is an enumerated advertising injury offense falling under the definition of "copying a person's or organization's advertising idea or advertising style."

78. No exclusion is applicable to the asserted claims.

79. High Point made proper demand for defense in connection with the BDI Action involving High Point and BDI.

80. Liberty was advised of the status of the dispute involving High Point and the status of the litigation throughout the case, and was also provided with additional evidence and discovery that the subject trade dress claim arose out of High Point's paid announcements/advertisements.

81. Yet, when Liberty finally responded, it improperly refused to defend High Point in the underlying litigation.

82. As a result, Liberty has breached the terms of the 2008-2011 Umbrella Policies at issue herein.

83. As a result of Liberty's breach, High Point has suffered actual and consequential damages in an amount in excess of $75,000.

**WHEREFORE**, High Point prays for judgment against Liberty as follows:

A. Actual compensatory and consequential damages in an amount to be proven at trial;

B. Pre-judgment interest on all awards of damages; and

C. Such other and further relief as the Court may deem just.

## JURY DEMAND

High Point request a trial by jury on all issues so triable.

                                               Respectfully submitted,
                                               **STERN & SCHURIN LLP**

                                               By: /s/ Richard Schurin

                                               Richard Schurin (RS 0199)
                                                  rschurin@sternschurin.com

                                             410 E. Jericho Turnpike
                                             Mineola, NY 11501
                                             Telephone: (516) 248-0300
                                             Facsimile: (516) 283-0277

                                             *Attorneys for Plaintiff*

Dated: September 29, 2014
       Mineola, New York