UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
    HIGH POINT DESIGN, LLC,

                      Plaintiff,

            -v-

    LM INSURANCE CORPORATION; LIBERTY
    MUTUAL FIRE INSURANCE COMPANY; and
    LIBERTY INSURANCE CORPORATION,

                      Defendants.
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 3, 2016

14-cv-7878 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

      This case concerns the scope of an insurer's obligation to cover the litigation expenses of its insured. The parties have briefed three legal questions: (1) The plaintiff's entitlement to recover costs incurred in the course of its coverage dispute with the defendants; (2) The plaintiff's entitlement to recover costs incurred during a joint defense of the underlying action; and (3) The plaintiff's entitlement to recover costs incurred in the course of seeking affirmative relief as to certain claims. (ECF No. 94.) Because plaintiff has disavowed any attempt to recover the costs incurred in the coverage dispute and before it faced counterclaims in the underlying action, the first and third questions are moot. (ECF No. 111 at 13.) The sole legal question presently before the Court, then, is the proper treatment of costs incurred during a joint defense in the underlying action.

For the reasons stated below, defendant is liable to plaintiff for the fees and expenses plaintiff incurred in defending the underlying action, less any "additional expenses" that would not have been incurred but for the presence of the non-covered defendants. Moreover, once plaintiff establishes prima facie proof that a particular expense was incurred in the underlying defense, it is defendant's burden to prove that it was an "additional expense" which should be allocated and thus exempted.

I.  FACTUAL BACKGROUND

   A.   The Underlying Action

The Underlying Action began on July 1, 2011, when plaintiff High Point Design, LLC filed a complaint against Buyer's Direct Inc. seeking a declaration that High Point had not infringed a slipper patent Buyer's Direct owned and that the patent was invalid, unenforceable, or both. (UA ECF[1] No. 1.) On December 29, 2011, Buyer's Direct counterclaimed against High Point, alleging infringement of its patent and trade dress. (UA ECF No. 13.) Buyer's Direct simultaneously filed a third-party complaint against Meijer, Inc., Sears Holding Corporation, and Wal-Mart Stores, Inc. (collectively, the "Retail Defendants"), alleging that they too had infringed its patent and trade dress. (UA ECF No. 14.)

On March 26, 2014, the Court granted a motion for summary judgment that had been jointly filed by High Point and the Retail Defendants. (UA ECF Nos. 74, 79 & 121.) The Court found both that Buyer's Direct patent was invalid and,

---

[1] The notation "UA ECF" refers to the docket in the Underlying Action, High Point Design, LLC v. Buyer's Direct Inc., 11-cv-4530 (KBF).

2

separately and additionally, that the product High Point and the Retail Defendants sold did not infringe on that patent. (UA ECF No. 121 at 15-16.) High Point Design LLC v. Buyer's Direct Inc., No. 11 Civ. 4530 (KBF), 2014 WL 1244558, at *7-8 (S.D.N.Y. Mar. 26, 2014). The Court's decision was appealed to the Federal Circuit, which, on July 30, 2015, reversed the determination of patent invalidity and affirmed the determination of non-infringement. (UA ECF No. 129 at 13-17.) High Point Design LLC v. Buyer's Direct, Inc., 621 F. App'x 632, 639-42 (Fed. Cir. 2015). This concluded the Underlying Action.

Two law firms, Gottlieb Rackman & Reisman, P.C., and Orrick, Herrington & Sutcliffe LLP, represented High Point and the Retail Defendants. (UA ECF Nos. 4, 72, & 73.) All motions in the Underlying Action were brought collectively by High Point and the three Retail Defendants. (See UA ECF Nos. 31, 74, 79, 102, & 119.) Defendant's fees expert in the instant action has identified approximately $51,500 of "fees for efforts related solely to the defense of the Retailer Defendants," and which "were not necessary for the defense of High Point." In total the Underlying Action generated approximately $1.6 million in attorney's fees and expenses.

B. The Coverage Dispute

From November 2008 to November 2012, High Point was a named insured on a series of Commercial General Liability ("CGL") insurance policies LM Insurance Corporation issued to a corporation affiliated with High Point and on a series of Umbrella insurance policies Liberty Mutual Fire Insurance Company issued to that

3

same affiliated corporation (the two insurers, along with Liberty Insurance Corporation, are collectively "Liberty"). (ECF No. 41, stmt. nos. 3-8, 12-15, 20-21.)

After High Point received Buyer Direct's counterclaim in the Underlying Action, it notified Liberty of the claim and tendered it for coverage and defense. On March 23, 2012, Liberty sent High Point a letter regarding the counterclaim. (ECF No. 35, Exh. C.) In that letter, Liberty noted that after investigation, it had "determined that the allegations in the complaint do not create a potential of coverage under the policy." (Id.) Liberty therefore declined to provide High Point with a defense or indemnity in the Underlying Action.

High Point responded to Liberty by letters dated April 5, 2012 and May 7, 2012. (ECF No. 35, Exhs. D & E.) Both letters argued that High Point's potential liability in the Underlying Action fell within the coverage of the insurance policies, and thus that Liberty had a duty to defend and indemnify High Point in that action. (Id.)

On June 25, 2012, Liberty responded to High Point. (ECF No. 35, Exh. O.) This letter explained that Liberty had considered the materials provided by High Point in connection with the Underlying Action, and still concluded that "there [was] no reasonable potential that a covered claim is alleged." (Id.) Liberty therefore continued to decline to defend or indemnify High Point, a position it maintained throughout the Underlying Action.

4

C.  The Instant Action

High Point filed its complaint against Liberty on September 30, 2014.  (ECF No. 1.)  High Point amended its complaint on November 12, 2014.  (ECF No. 16.)  In both complaints, High Point sought "damages and compensation for the defense costs it ha[d] incurred and [was then] continuing to incur in connection with claims asserted against it" in the Underlying Action by Buyer's Direct.  (ECF Nos. 1 & 16, ¶ 1.)  The complaints identified the Underlying Action but did not reference the Retail Defendants in that action.  (Id.)

On January 25, 2015, High Point moved for partial summary judgment on liability as to Liberty's duty to defend.  (ECF Nos. 34 & 39.)  The Court granted the motion on the record at a conference on March 2, 2015, determining that the counterclaims in the Underlying Action had in fact given rise to a duty to defend. (ECF No. 58.)  The amount of damages was not part of High Point's summary judgment motion, and thus the Court discussed with the parties the most efficient way to resolve that remaining issue.  (Id.)  Ultimately, the Court entered partial final judgment under Fed. R. Civ. P. 54(b) as to the legal claim of liability and Liberty took an interlocutory appeal of that question to the Second Circuit. (ECF Nos. 90 & 91.)

On September 3, 2015, the Second Circuit dismissed the appeal, finding that the Court had abused its discretion by granting certification under Rule 54(b). (ECF No. 92.)  The case thus returned to the Court for resolution of the damages issue, and following a status conference with the parties the Court identified the

5

three legal questions listed above as requiring resolution before damages could be determined. (ECF No. 94.) High Point's briefing has rendered two of the questions moot. (ECF No. 111 at 13.) Thus, this order resolves the legal question of plaintiff's entitlement to recover costs incurred during a joint defense of the underlying action.

II. ANALYSIS

The parties agree that any "additional expenses" which were incurred in the Underlying Action solely in defense of the Retail Defendants fall outside of the insurance coverage High Point purchased from Liberty and are not recoverable. (ECF No. 111 at 8.) Where they disagree is whether defense expenses in the Underlying Action that redounded to the benefit of both High Point and the three Retail Defendants are entirely recoverable (High Point's position) or should be divided pro rata between the four benefiting parties (Liberty's position).

Case law on the proper apportionment of defense costs among insured and non-insured defendants is scattered and "rather sparse." Reliance Grp. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 594 N.Y.S.2d 20, 26 (N.Y. App. Div. 1993). Both parties have provided at least some support for their position.

Liberty has identified a number of cases in which courts have awarded insureds in the same position as High Point only a pro rata percentage of the total cost of the underlying defense. For example, in Castro v. Federal Insurance Co., 823 F. Supp. 132 (S.D.N.Y. 1993), a law firm defended both an individual, who was an insured owed a defense, and her corporation, which was not. Id. at 137. The firm only issued one set of bills, and "the goals of each defendant were common." Id.

Under these circumstances, and without citation, the district court concluded that the insurer "should pay one half of the legal fees that the law firm billed in connection with the [underlying] action." Id.  A strikingly similar situation arose in Lyman Morse Boatbuilding, Inc. v. Northern Assurance Co. of America, Inc., No. 2:12-cv-313-DBH, 2014 WL 901445 (D. Me. Mar. 6, 2014), where a single law firm provided an underlying defense to both an non-covered corporation and its covered principal shareholder, whose "defenses overlapped substantially, albeit not entirely." Id. at *3.  The district court focused on the absence of evidence that could provide a rational basis for allocation, and concluded that based on "[t]he equities of the case," it was appropriate to award the insured half the cost of the underlying defense.  Id. at *4.  In an analogous case, State of New York v. Blank, 745 F. Supp. 841 (S.D.N.Y. 1990), a single insured was covered for some underlying proceedings but not others, and the district court ruled that "[a]ny defense costs which [could not] be separated out because the services rendered appl[ied] to more than one proceeding [would] be divided and assessed evenly." Id. at 852.

  High Point, however, has the support of more and better-reasoned case law.  First, the law is clear that the party seeking to allocate expenses bears the burden of proving what amount of allocation is appropriate once the insured has made a prima facie showing that certain amounts were spent in its defense.  This was among the holdings of Health-Chem Corp. v. National Union Fire Insurance Co. of Pittsburgh, Pa., 559 N.Y.S.2d 435 (N.Y. Sup. Ct. 1990), a case both parties cite and one of the most thorough treatments of the allocation issue.  The underlying action

7

in Health-Chem was actually two actions tried together; one action was against both covered directors and their non-covered employer corporation, while the other was solely against the non-covered corporation. Id. at 189. The Health-Chem court found that allocation was not only "permitted if factually possible," but was in fact "certainly mandated, if possible." Id. at 190, 191. The court then located the burden of proving that possibility: "Once prima facie proof that an expense was incurred in defense of a covered party has been introduced, the burden of showing that all or a specific portion of it was incurred in defense of a non-covered party, is on defendant." Id. at 191.

Courts applying New York law in allocation cases since Health-Chem have upheld this placement of the burden of proof. See St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP, No. 14-cv-8002 (JSR), 2015 WL 5440694, at *13 (S.D.N.Y. Sept. 9, 2015) (denying a motion to realign the parties at trial because "[t]he burden to allocate losses … falls on the insurer"); Pfizer, Inc. v. Stryker Corp., 385 F. Supp. 2d 380, 387 (S.D.N.Y. 2005) (vacating jury award because the party seeking to allocate some of its expenses "did not provide the jury any evidence on which to base its allocation"). Courts have also placed this burden on insurers that seek to allocate responsibility to fund settlements that extinguish both covered and uncovered claims. PepsiCo, Inc. v. Cont'l Cas. Co., 640 F. Supp. 656, 662 (S.D.N.Y. 1986) (holding that the insurer "must accordingly bear the ultimate burden of proving what amount of the settlement costs should be excluded from the policy coverage").

In addition to clarifying the proper placement of the burden of proof in allocation cases, Health-Chem also provides instruction about how to allocate defense costs among covered and non-covered parties. The court reasoned that the insurer was

> only liable for the expenses of defending certain defendants. If additional expenses were incurred in defense of the action on behalf of the non-covered defendants, there is no reason why [the insurer] should be required to pay such expenses. To put it another way, the coverage afforded by the policy should not now be expanded.

559 N.Y.S.2d at 190-91. Thus, the amount that should be allocated to the non-covered parties, and thus not recouped from the insurer, are any "additional expenses" which would not have occurred but for the inclusion of the non-covered defendants. Which expenses were in fact "additional" is, Health-Chem warns, "a substantial fact issue." Id. at 191; see also Curtis v. Nutmeg Ins. Co., 681 N.Y.S.2d 620, 621 (N.Y. App. Div. 1998) (applying abuse of discretion review to the trial court's allocation of defense costs between covered and non-covered parties and upholding the allocation "[i]n light of the painstaking care taken by [the] Supreme Court in analyzing all documents and testimony").

This approach to allocation is the only one that respects the relationship between insured and insurer in accordance with New York law. "The cardinal principle for the construction and interpretation of insurance contracts—as with all contracts—is that the intentions of the parties should control." SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC, 467 F.3d 107, 125 (2d Cir. 2006) (quoting Newmont Mines Ltd. v. Hanover Ins. Co., 784 F.2d 127, 135 (2d Cir. 1986)). High

9

Point and Liberty entered into an insurance contract which, as the Court has already determined, included a duty to defend High Point in the Underlying Action. Thus, the contract required Liberty to pay High Point's defense costs – nothing more, and nothing less.

It may be that Liberty can seek contribution from the Retail Defendants or their insurance companies; New York law does contain "a well-settled equitable right to contribution" between insurers in the analogous situation in which "there is concurrent insurance" as to a single insured. U.S. Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d 882, 885 (2d Cir. 1988) (alteration omitted) (quoting Travelers Ins. Co. v. Gen. Accident, Fire & Life Assurance Corp., 271 N.E.2d 542, 544-45 (N.Y. 1971)). However, there is no support in precedent or logic by which an insurer's obligation to defend its insured is steadily diminished as the insured's opponent in the underlying action adds parties to the insured's side of the caption. By Liberty's reasoning, the amount it owes High Point pursuant to the insurance contract it issued would depend on Buyer Direct's litigation decisions. This interpretation would permanently destabilize the value of insurance contracts for insureds, and is inconsistent with Second Circuit law. See, e.g., Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 611, 623 n.15 (2d Cir. 2001) (holding, without discussing allocation, that an insurer was obligated to defend a covered subsidiary in an underlying action that was brought equally against the subsidiary and its non-covered parent corporation).

III.  CONCLUSION

For the reasons stated above, High Point will have the initial burden to provide prima facie proof that a particular expense was incurred in its own defense.[2]  After that prima facie showing is made, Liberty will have the burden of showing that all or a specific part of that expense was an "additional expense" which would not have been incurred but for the presence of the Retail Defendants.

The parties shall confer and provide the Court with a proposed schedule for resolving this matter, including an evidentiary hearing if necessary.  The parties shall provide this proposed schedule in a short letter not later than **Friday, February 11, 2016**; if the parties cannot agree to a schedule, each shall propose one not later than that date.

SO ORDERED.

Dated:    New York, New York
          February 3, 2016

_____
KATHERINE B. FORREST
United States District Judge

---

[2] High Point argues that it has already satisfied this initial burden (ECF No. 111 at 8-9), but because further evidentiary proceedings are necessary, the Court does not need to, and does not, make such a determination at this stage.  Similarly, nothing in this Opinion constitutes a determination as to the reasonableness of any claimed fees or expenses.